**Norma JOHNSON, Plaintiff,**

v.

**Elaine MACY, Defendant.**

**Case No. CV 15–7165 FMO (ASx)**

United States District Court, C.D. California.

Signed November 16, 2015

David P. Elder, Teri Yin, Joel Marrero, Housing Rights Center, Los Angeles, CA, for Plaintiff.

Edward L. Laird, Stephen C. Duringer, Duringer Law Group PLC, Anaheim, CA, for Defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

Fernando M. Olguin, United States District Judge

Having reviewed and considered plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("Application," Dkt. No. 12) and the parties' responses to the Court's Order Granting Temporary Restraining Order and Issuing Order to Show Cause ("TRO Order," Dkt. No. 16), the court held a hearing on November 10, 2015. No appearance was made on behalf of defendant. (*See* Minutes of Hearing Re: Order to Show Cause, Dkt. No. 23).

### *INTRODUCTION*

On September 11, 2015, plaintiff Norma Johnson ("plaintiff" or "Johnson") filed a complaint against defendant Elaine Macy ("defendant" or "Macy") asserting claims for violations of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"); the California Fair Employment and Housing Act, Cal. Gov.Code §§ 12955 *et seq.* ("FEHA"); the Unruh Civil Rights Act, Cal. Civ.Code § 51; the Disabled Persons Act, Cal. Civ.Code § 54; as well as claims for negligence and retaliation. (*See* Complaint, Dkt. No. 1, at ¶¶ 25–38). On October 21, 2015, plaintiff filed the instant Application. Defendant filed an Opposition on October 22, 2015. (*See* Elaine Macy's Opposition to Plaintiff's Ex Parte Application for a Temporary Restraining Order ("TRO") ("TRO Opp."), Dkt. No. 15). The court granted a Temporary Restraining Order on October 23, 2015, ordering that defendant "shall not take any further steps to evict plaintiff Norma Johnson pending

resolution of her application for a preliminary injunction." (*See* TRO Order at 13). It also directed defendant to show cause at a hearing on November 10, 2015, "why an order should not issue preliminarily enjoining defendant, pursuant to Federal Rule of Civil Procedure 65, from taking any further steps to evict plaintiff." (*See id.* at 14). Defendant filed her opposition (*see* Elaine Macy's Opposition to the Granting of a Preliminary Injunction ("PI Opp."), Dkt. No. 18), and plaintiff filed her reply on November 4, 2015, (*see* Plaintiff's Reply to Defendant's Opposition to Order Granting a Temporary Restraining Order ("PI Reply"), Dkt. No. 21). However, as noted earlier, no appearance was made on behalf of defendant at the show cause hearing.

## BACKGROUND

Since November 27, 2001, Johnson has lived in a second-floor unit in a rental property located at 911 West Olive Avenue in Monrovia, California. (*See* Declaration of Norma Johnson in Support of Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Johnson Decl."), Dkt. No. 12–1, at ¶ 4).[1] Defendant is the owner, manager, and operator of the property. (*See* Complaint at ¶ 6).

In or around January 2009, Johnson injured her knees and neck at work, which ultimately rendered her physically disabled. (*See* Complaint at ¶ 7). Johnson alleges that she has frequent headaches and that excessive physical activity causes pain to her knees. (*See id.*). Notwithstanding her disability, Johnson "is able to ascend and descend the stairs to her apartment without issue." (*See id.*). In fact, Johnson explains that her doctor recommended that she continue to walk up and down the stairs to exercise her knees.

(*See* Johnson Decl. at ¶ 7). In or around 2012, Johnson informed defendant of her injury and that she was receiving workers' compensation. (*See* Complaint at ¶ 8). In June 2013, defendant allegedly demanded that Johnson relocate her phone line and build a storage shed near a vacant first-floor unit. (*See id.* at ¶ 9). At some point thereafter, defendant allegedly demanded that Johnson relocate to that first-floor unit. (*See id.*). Johnson refused the offer to relocate. (*See id.*).

In April 2014, after Johnson complained to defendant about defendant's having removed Johnson's belongings from a storage area without notice, defendant increased Johnson's rent by $40. (*See* Complaint at ¶ 10). Around the same time, defendant again asked Johnson to relocate to a first floor unit. (*See id.*). Plaintiff alleges that in order to "harass [her] and make [her] tenancy in the second floor apartment increasingly intolerable, daily and for hours at a time [defendant] has parked her car directly in front of the stairs" leading to Johnson's unit, making it difficult for Johnson to load and unload items from her car. (*See id.* at 11). Defendant allegedly has refused to move her car. (*See id.*).

In August 2014, defendant again told Johnson that she wanted her to move to a first-floor unit. (*See* Complaint at ¶ 12). Johnson reports that in that conversation, defendant stated, "you don't even walk right. You're disabled and I don't want you living here. You will fall and sue me." (Johnson Decl. at ¶ 10). Later that month, defendant increased Johnson's rent by $80 per month. (*See id.*, Exh. 2) (note from defendant to plaintiff regarding rent increase, dated August 15, 2014).

---

1. Plaintiff's Complaint alleges that she has lived at the property since December 2000. (*See* Complaint at ¶ 5). However, the Application and Johnson's declaration state that she has lived there since November 27, 2001. (*See* Application at 2; Johnson Decl. at ¶ 4).

In September 2014, defendant wrote another note to plaintiff stating, "on numerous occasions when I was working on the downstairs apartment I tried to convince you to move there. You continually refused. Perhaps with all your medical problems, you should find a downstairs apartment which eliminated the stairs. Your life would become easier and more manageable." (*Id.*, Exh. 3) (note from defendant to plaintiff regarding parking spaces and the downstairs unit, dated September 19, 2014). Johnson still refused to relocate to a unit on the first floor. (*See* Complaint at ¶ 13).

In May 2015, in another note to plaintiff, defendant wrote that the door mat in front of plaintiff's door was a safety issue. (*See* Johnson Decl., Exh. 4 (note from defendant to plaintiff dated May 5, 2015). She added, "I am concerned about your safety. The medical situation and medications make the matter complex. The door mat is a possible hazard. As previously stated, you need to find a ground level apartment for your safety. Your body is not getting better." (*Id.*). According to Johnson, she never told defendant about any medications or having any physical issues with the mat or stairs. (*See* Complaint at ¶ 14).

Within a week of the May 2015 note, defendant allegedly increased Johnson's rent by $100 per month. (*See* Complaint at ¶ 15). Later that month, "in response to Ms. Macy's discriminatory statements and efforts to relocate Ms. Johnson to a first-floor unit," Johnson filed a complaint with the Housing Rights Center. (*See id.* at ¶ 16). In early June, Johnson notified the Los Angeles Department of Building and Safety that defendant placed a lock on her electric breaker. (*See id.* at ¶ 17). The Department of Building and Safety inspected the property, cited defendant for several violations, and allegedly ordered her to remove the lock from Johnson's breaker. (*See id.*).

On June 26, 2015, "in retaliation for Ms. Johnson's complaint to the Department of Building and Safety" (Complaint at ¶ 18), defendant increased Johnson's rent by another $100 per month. (*See id.* & Johnson Decl., Exh. 5 (note from defendant to plaintiff regarding rent increase, dated June 26, 2015)). Then, in a note dated July 23, 2015, defendant gave Johnson a 60-day notice terminating her tenancy. (*See* Complaint at ¶ 19 & Johnson Decl., Exh. 6 (note from defendant to plaintiff providing "official notice to move" within 60 days, dated July 23, 2015)).

Plaintiff alleges that in a telephone conversation on August 25, 2015, the Housing Rights Center informed defendant of the complaint against her and that her actions were "discriminatory, retaliatory, and in violation of the law." (*See* Complaint at ¶ 21). The Housing Rights Center reiterated the conversation in a letter to defendant dated August 27, 2015. (*See id.* & Declaration of Evelyn Araujo in Support of Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Araujo Decl."), Dkt. No. 12–3, at ¶ 5 & Exh. 1)). Then, "[o]n August 28, 2015, in retaliation for contacting the [Housing Rights Center]" (Complaint at ¶ 22), defendant issued another 60-day notice to Johnson, terminating her tenancy effective October 27, 2015. (*See* Johnson Decl., Exh. 7 (Notice of Termination of Tenancy, dated August 28, 2015)).

Plaintiff alleges that "[b]etween April 2014 and September 2015, [her] rent increased $320. Ms. Macy had not increased any other tenant's rent ... by that amount during that period and had not pressured any other tenant to relocate to a first-floor unit. Ms. Macy has targeted Ms. Johnson and, only her, because Ms. Johnson has a disability and, more than once, exercised her housing rights." (Complaint at ¶ 20).

Shortly after plaintiff filed her Complaint, her counsel agreed with defendant's attorney that Macy would not proceed with an unlawful detainer action. (*See* Declaration of Joel Marrero in Support of Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Marrero Decl."), Dkt. No 12–2, at ¶ 4). In early October, plaintiff's counsel learned that defendant obtained new counsel and informed the new counsel of plaintiff's "intent to apply for a [temporary restraining order] unless Defendant stipulated to cease any efforts to evict Plaintiff during the pendency of this federal lawsuit." (*See id.* at ¶¶ 5–6). Defendant's counsel refused to stipulate, and instead asked plaintiff's counsel to provide more detail, specifically a "discussion [with] citation to authority as to why a federal court should intervene in a routine state court action involving the termination of a tenancy[.]" (*See id.,* Exh. 5 at 2). Plaintiff's counsel responded with an explanation of remedies under the FHA, state unlawful detainer procedures, and federal courts' authority to enjoin or prevent such proceedings. (*See id.* at 1). Nonetheless, defendant's counsel refused to stipulate to cease any efforts to evict Johnson. (*See* Marrero Decl. at ¶ 10). When Johnson gave her October rent check to defendant, defendant returned it and stated that she only owed rent through October 27, 2015—the termination date of the 60–day notice—and that if Johnson did not move out by then, defendant would change the locks to the apartment. (*See* Johnson Decl. at ¶ 21).

### LEGAL STANDARD

Rule 65 provides courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, *see U.S. Philips Corp. v. KBC Bank N.V.,* 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *See Wahoo Intern., Inc. v. Phix Doctor, Inc.,* 2014 WL 2106482, *2 (S.D.Cal. 2014). The standards for a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir.2001); *Rowe v. Naiman,* 2014 WL 1686521, *2 (C.D.Cal. 2014) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter,* 555 U.S. at 20, 129 S.Ct. at 374; *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir.2015) (en banc) (same). The Ninth Circuit also employs a "sliding scale" formulation of the preliminary injunction test under which an injunction could be issued where, for instance, "the likelihood of success is such that serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor[,]" *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.2011) (internal quotation marks and brackets omitted), provided the other elements of the *Winter* test are met. *Angelotti Chiropractic, Inc. v. Baker,* 791 F.3d 1075, 1081 (9th Cir.2015) ("Serious questions going to the merits and hardship

balance that tips sharply towards plaintiffs can also support issuance of a preliminary injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest.") (internal quotation marks and brackets omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 1867, 138 L.Ed.2d 162 (1997) (emphasis in original and citation omitted); *Silvas v. G.E. Money Bank,* 449 Fed.Appx. 641, 644 (9th Cir. 2011) (same). Indeed, the moving party bears the burden of meeting all prongs of the *Winter* test. *See Cottrell,* 632 F.3d at 1135; *DISH Network Corp. v. FCC,* 653 F.3d 771, 776 (9th Cir.2011), *cert. denied* —— U.S. ——, 132 S.Ct. 1162, 181 L.Ed.2d 1017 (2012) ("To warrant a preliminary injunction, [plaintiff] must demonstrate that it meets all four of the elements of the preliminary injunction test established in *Winter[.]*"). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. *See Winter,* 555 U.S. at 32, 129 S.Ct. at 381.

### *DISCUSSION*

## I. PROCEDURAL MATTERS.

The court is unsure whether defendant maintains that the Application is "clearly premature" and that the court is barred from granting relief under the Anti–Injunction Act, 28 U.S.C. § 2283. (*See* TRO Opp. at 2). To the extent that she does, the court is unpersuaded by such arguments for the reasons stated in the TRO Order and hereby incorporates that discussion. (*See* TRO Order at 6–9).

In its opposition to the preliminary injunction, defendant requests "some additional time[,]" "[g]iven the very limited time available to investigate and prepare this Opposition, and the apparent availability of corroborating third party declarations[.]" (*See* PI Opp. at 1). The same paragraph, however, begins with: "[a]s described herein and the accompanying Declaration ... there is substantial evidence of bona fide grounds for the subject Notice of Termination." (*Id.*). While the court disagrees with defendant's characterization of the evidence, the court agrees with the suggestion that the evidence before it is sufficient upon which to decide whether plaintiff is entitled to a preliminary injunction. Defendant has had an opportunity to gather evidence since plaintiff first filed her Application approximately three weeks ago. Indeed, she presented evidence in the form of her own declaration. (*See* Declaration of Elaine Macy's [sic] in Opposition to Plaintiff's Application for Preliminary Injunction ("Macy Decl."), Dkt. No 18–1). In that declaration, she describes one "hostile" interaction with Johnson, which she states was also witnessed by a maintenance man. (*See* Macy Decl. at ¶ 7). She also states that she is "informed that [Johnson] has also been extremely hostile to another tenant." (*Id.* at ¶ 8). However, even if "corroborating third party declarations" (*see* PI Opp. at 1 & 5) existed, they would not change the court's conclusion, described in further detail below, that defendant has not adequately shown why the preliminary injunction should not issue.[2] Further, given defendant's repeated insistence that she lawfully may—and must—evict plaintiff (*see, e.g.,* PI Opp. at 6 & 8–10), the court is persuad-

---

**2.** The court reviewed the Declaration of Viken Sultanian in Opposition to Plaintiff's Application for Preliminary Injunction ("Sultanian Decl.," Dkt. No. 22), which was filed on November 6, 2015. Nothing in Sultanian's con-

clusory and unsupported declaration changes the result here, especially given defendant's shifting explanations as to the reason she seeks to evict plaintiff. *See infra* at § II.A.

ed that additional delay would only create opportunity for further harm to Johnson.

In short, the court may now issue a preliminary injunction if plaintiff meets the legal standard described above, *see* Legal Standard, *supra.* Each of the four *Winter* elements is addressed in turn below.

## II. WHETHER PLAINTIFF IS ENTI-TLED TO A PRELIMINARY IN-JUNCTION.

### A. *Likelihood of Success on the Merits.*

■ "The first factor under *Winter* is the most important—likely success on the merits." *Garcia,* 786 F.3d at 740. Here, there is a strong likelihood of success on the merits of Johnson's claim for disability discrimination in violation of the FHA and FEHA.[3] The FHA specifically states that it is unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer' or renter because of a handicap of ... that ... renter." 42 U.S.C. § 3604(f)(1). The FHA also makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of the sale or rending of a dwelling ... because of a handicap." *Id.* at § 3604(f)(2). Discriminatory conduct encompasses threats of eviction or efforts to evict a tenant because of a disability. *See* 24 C.F.R. § 100.60(b)(5) (landlord prohibited from "[e]victing tenants because of their ... handicap[s].").  As plaintiff points out, "steering" on the basis of handicap is also prohibited. (*See* PI Reply at 5). The federal regulations state that "[i]t shall be unlawful because of ... handicap ... to restrict or attempt to restrict the choices of a person by word or conduct in connection with ... buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood, or development." 24 C.F.R. § 100.70(a). Among the practices prohibited are "assigning any person to a particular section of a community, neighborhood or development, or to a particular floor of a building, because of ... handicap[.]" *Id.* at § 100.70(c)(4). Finally, the FHA prohibits making, printing, or publishing statements indicating a preference based on handicap. *See* 42 U.S.C. § 3604(c).

■ Discrimination based on an intentional consideration of any protected category under the FHA is illegal, even if defendant was not motivated by personal prejudice or animus. *See, e.g., Community Services Inc., v. Wind Gap Mun. Authority,* 421 F.3d 170, 177 (3d Cir.2005) (to violate the FHA, "[t]he discriminatory purpose need not be malicious or invidious" and "it is a violation ... to discriminate even if the motive was benign or paternalistic") (citation omitted). Defendant's notices to Johnson, of which Johnson kept copies and provided to this court with her declaration, are proof of defendant's discriminatory intent. The September 19, 2014, notice referenced Johnson's "medical problems," and suggested that her life would be "easier and more manageable" if she were to "find a downstairs apartment which eliminated the stairs." *(See* Johnson Decl., Exh. 3). Her later note referred to Johnson's "medical situation[,]" and said that Johnson needed "to find a ground level apartment for [her] safety."

---

**3.** For purposes of this order, the standards under California's FEHA and the federal FHA are the same. *See Walker v. City of Lakewood,* 272 F.3d 1114, 1131 n. 8 (9th Cir.2001), *cert. denied,* 535 U.S. 1017, 122 S.Ct. 1607, 152 L.Ed.2d 621 (2002); *see also Broadmoor San Clemente Homeowners' Assn. v. Nelson,* 25 Cal.App.4th 1, 5–7, 30 Cal.Rptr.2d 316 (Cal. App.1994) ("it clearly was the intent of the Legislature, in adopting the 1993 amendments [to FEHA], to conform California law on the subject of fair housing to the Federal Fair Housing Act.").

(*See id.*, Exh. 4). Remarkably, defendant stated at the end of that note, "[y]our body is not getting better." *(See id.)*. These letters corroborate Johnson's claim that defendant treated her differently in the terms, conditions, and privileges of housing due to her physical condition—or based on defendant's perception of her physical condition[4]—and support Johnson's claim that defendant is attempting to terminate her tenancy due to her disability. Accordingly, the court finds that plaintiff is likely to prevail in her claim that defendant discriminated against her on the basis of her disability in violation of §§ 3604(f)(1) and (2) of the FHA.

▮ Plaintiff is also likely to prevail on her claim under § 3604(c) of the FHA, which makes it unlawful to "make, print, or publish ... any notice [or] statement ... with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... handicap ... or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). This provision applies to "all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R.

§ 100.75(b). Under § 3604(c), courts ask whether "the alleged statement at issue would suggest a preference to an 'ordinary reader or listener.'" *Pack v. Fort Washington II*, 689 F.Supp.2d 1237, 1245 (E.D.Cal.2009), citing *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1290 (C.D.Cal.1997). Under this provision, discriminatory intent is not required. *See id.* Plaintiff is likely to prevail on her claim under § 3604(c) because defendant's written notes facially indicate a preference for tenants without disabilities. They clearly show that defendant had a preference against Johnson's tenancy on the second floor unit due to defendant's perception of Johnson's physical impairment.

Indeed, it is worth noting the similarities between this case and *Weber*. In *Weber*, which involved the protected class of familial status, the housing provider, citing safety concerns, "had a rule that families with small children were not to live in any of the ... second-floor entry units[.]" 993 F.Supp. at 1289–90. The court concluded that such a policy violated § 3604(a)[5] because it made a unit unavailable on a protected basis and § 3604(c) because it communicated a preference or limitation on

---

4. The fact that plaintiff may not be as limited as defendant understands or understood her to be does not make plaintiff less likely to prevail. A plaintiff who is perceived to have a disability he or she does not have is protected by the FHA when a landlord discriminates on the basis of that misperception. *See* 42 U.S.C. § 3602(h) (defining "handicap" as including a persons who have "physical or mental impairment[s]" and those who are "regarded as having such an impairment"); *see also Sutton v. United Air Lines Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *superseded on other grounds by statute*, U.S. Pub.L. 110–325 (in interpreting the ADA, which uses the same "regarded as" disabled definition as the FHA, finding that "a person is 'regarded' as disabled" if a defendant believes that person has a physical impairment covered by the statute). Thus, even in the absence of a substantially limiting im-

pairment under the FHA, *see* 42 U.S.C. § 3602(h), or a limiting disability under FEHA, *see* Cal. Gov.Code § 12926(m), Johnson will likely prevail on her claims that defendant denied her housing and treated her differently based on defendant's perception of her alleged impairments.

5. Section 3604(a) is substantially similar to the provision at issue in this case, § 3604(f), in that it makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny," housing on the basis of race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604(a). Section 3604(f) includes handicap as a basis upon which a housing provider may not discriminate in the sale or rental, or otherwise make unavailable or deny a dwelling. *See id.* at § 3604(f).

the basis of a protected category. *See id.* at 1293–94. The court granted summary judgment in favor of the plaintiff, finding that the housing provider's " 'steering' of families with small children to apartments other than those with second-floor entries constitutes a violation of [§§ 3604(a) and (c) ] of the Fair Housing Act." *Id.* at 1294.

■ Defendant has made a number of arguments as to why plaintiff cannot demonstrate a likelihood of success on the merits (*see* PI Opp. at 3–6), but for the reasons described below, the court is unpersuaded by those arguments. First, defendant asserts that under the *McDonnell Douglas* burden-shifting framework, she has offered nondiscriminatory reasons for the rent increases (simply bringing plaintiff's rent up to market value) and termination (plaintiff's owning a cat in violation of her lease and being hostile to defendant and others), and that plaintiff cannot demonstrate that these reasons are pretextual. (*See* PI Opp. at 3). In making that argument, however, defendant has failed to account for the fact that plaintiff has offered direct evidence that housing decisions were made in violation of the FHA and the FEHA. (*See, e.g.,* Johnson Decl., Exhs. 2–4). When a plaintiff provides direct evidence, the burden-shifting analysis is unnecessary. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 250 (9th Cir.1997), *abrogated on other grounds, as recognized by Borja–Valdes v. City and Cnty. of San Francisco,* 2015 WL 5522287, *8 n. 5 (N.D.Cal.2015) ("Where direct evidence is used to show that a housing decision was made in violation of the statute, the burden shifting analysis is inapposite."); *Lowe v. City of Monrovia,* 775 F.2d 998, 1006 (9th Cir.1985) ("a plaintiff can establish a *prima facie* case of disparate treatment without satisfying the *McDonnell Douglas* test."). Even if the burden-shifting analysis were appropriate in this case, the letters and notes written by defendant are more than sufficient to establish pretext.

Indeed, defendant's failure to address directly the letters and notes suggests that she has fallen far short of articulating a legitimate nondiscriminatory reason for her actions. (*See, generally,* PI Opp.).

Further, defendant's purported nondiscriminatory reasons with respect to plaintiff's eviction are reasons that not been previously asserted or are inconsistent with the reasons previously given to plaintiff. For example, defendant states that she issued the Notice of Termination to plaintiff because she "has refused to remove a cat and has become extremely hostile and difficult to deal with ever since she, together [with] all the other residents, were [sic] asked to remove things that were being stored on the ground of the carports." (Macy Decl. at ¶ 5). None of these reasons were raised in defendant's notes to plaintiff (*see* Johnson Decl., Exhs. 1–6) or in either Notice of Termination (*see id.* at Exhs. 6 & 7), nor were they mentioned in defendant's initial briefing. (*See, generally,* TRO Opp.). Indeed, the first Notice of Termination gives no reason and the second Notice of Termination says that the "landlord seeks in good faith to recover possession of the rental unit for use and occupancy as a primary place of residence for the landlord, or the landlord's spouse, grandchildren, children, parents or grandparents." (*See* Johnson Decl. at Exh. 7). Thus, even assuming plaintiff had not provided direct evidence of discrimination, defendant's newly asserted inconsistent explanations raise serious questions as to the real reason that defendant is seeking to terminate plaintiff's tenancy. *See, e.g., Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993) ( finding that "such fundamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason"); *Sanchez v. Corr. Corp. of America,* 2007

WL 1390675, *12 (E.D.Cal.2007) ("substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."). Indeed, defendant's failure to directly address her letters and notes in the PI Opp. is an implicit concession as to the real reasons for defendant's conduct. *See, e.g., Tatum v. Schwartz*, 2007 WL 419463, *3 (E.D.Cal.2007) (finding that a plaintiff "tacitly concede[d] [a] claim by failing to address defendants' argument in her opposition."); *PageMasters, Inc. v. Autodesk, Inc.*, 2009 WL 825810, *10 (D.Ariz.2009) ("The court construes [plaintiff's] silence as conceding the validity of [defendant's] argument on the merits.").

Second, defendant asserts that "[a]n issue exists as to whether Plaintiff has a qualified disability." (*See* PI Opp. at 3). Defendant attempts to distinguish *Gonzalez v. Recht Family P'ship*, 51 F.Supp.3d 989 (S.D.Cal.2014), which the court relied upon in its TRO Order not in its discussion of the merits of plaintiff's case, but to explain the reasons that the Application was not premature (*see* TRO Order at 7), and that the public interest weighed in favor of granting the TRO (*see id.* at 13). Nonetheless, defendant argues that the case is inapposite because the plaintiff in that case "proved the first prong of the Winter test by showing she suffered from a physical impairment which substantially limit[ed] her ability to walk" and that there was evidence defendants knew or reasonably should have known of the handicap but refused to accommodate plaintiff. (*See* PI Opp. at 3) (internal quotation marks omitted). Then, defendant argues, "[t]hese facts are contrary to the facts of this case as it has already been established that Plaintiff can walk and has not established her prima facie case that she is likely to succeed on the merits." (*Id.* at 4). But plaintiff's ability to walk is inapposite. As the court has already explained, the "fact that plaintiff may not be as limited as

defendant understands or understood her to be does not make plaintiff less likely to prevail. A plaintiff who is perceived to have a disability he or she does not have is protected by the FHA when a landlord discriminates on the basis of that misperception." (*See* TRO Order at 10, n. 5 & *supra* at n. 4). And, as stated previously, plaintiff has established that she is likely to succeed on the merits.

■ Third, defendant provided a declaration that aims to explain some of the allegations raised by plaintiff. She first states that "[i]t makes no sense that I would now be discriminating against Ms. Johnson due to her disability when in fact I have been aware of her stated problem with her knees and neck for several years and never took any action to terminate her tenancy." (*See* Macy Decl. at ¶ 4). And, "[c]oncerning the rent increases that have been given to Ms. Johnson, all that [defendant has] done is to take gradual steps to bring the rent for Ms. Johnson's apartment closer to market rate." (*Id.* at ¶ 11). None of this evidence—including the Sultanian declaration—refutes the powerful evidence that plaintiff has submitted, which shows that defendant was interested in steering plaintiff to a first floor unit because of her disability. Even assuming that possession of a cat and being "extremely hostile" are valid reasons for termination of Johnson's tenancy—which, as noted above, appear to be pretextual— FEHA is clear that a person intends to discriminate if an impermissible basis such as race, religion, or disability "is a motivating factor in committing a discriminatory housing practice even though other factors may have also motivated the practice." *See* Cal. Gov.Code § 12955.8(a). Although the FHA is less clear on this point, the court agrees with those federal courts that have found that FHA plaintiffs need only prove that some discriminatory purpose

was a motivating factor behind the challenged action. *See, e.g., Cmty. Servs., Inc. v. Wind Gap Mun. Auth.,* 421 F.3d 170, 177 (3d Cir.2005) (to prevail on an FHA claim, "a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action"); *Hamm v. City of Gahanna, Ohio,* 109 Fed.Appx. 744, 747 (6th Cir.2004) (to establish intentional discrimination under the FHA, a plaintiff must present evidence showing that an "impermissible 'discriminatory purpose was a motivating factor'" in defendant's decision); *Hadeed v. Abraham,* 103 Fed.Appx. 706, 707 (4th Cir.2004) (using the motivating factor standard in an FHA claim); *Reg'l Econ. Comm. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 49 (2d Cir.2002) (using a "significant factor" standard for an FHA claim) *(superseded by statute on other grounds,* ADA Amendments of 2008, Pub.L. No. 110–325, 122 Stat. 3553, *as recognized by McCulloch v. Town of Milan,* 559 Fed. Appx. 96, 98 (2d Cir.2014); *Simms v. First Gibraltar Bank,* 83 F.3d 1546, 1556–57 (5th Cir.1996) (same). Finally, defendant maintains that she increased plaintiff's rent because it was below market rate, but that explanation fails because it does not account for the context in which the increases took place. *(See, e.g.,* Johnson Decl. at ¶¶ 11–13 & 15–16 (describing rent increases shortly after refusing the first floor apartment and exercising other housing rights); Complaint at ¶ 20 (alleging that no other tenant experienced a similar rent increase during the relevant time period)).

In short, defendant's arguments do nothing to alter the court's prior conclusion that plaintiff has established a strong likelihood of success on the merits on all of her claims.[6] At the very least, defendant's arguments do very little to change the fact that the letters attached to Johnson's declaration all but establish a violation of § 3604(c) regarding written discriminatory statements.

### B. *Irreparable Harm.*

■ A plaintiff must demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction. *See Winter,* 555 U.S. at 20, 129 S.Ct. at 374. Moreover, the Ninth Circuit has cautioned that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988). As a general rule, a plaintiff seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate" for the injury. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,* 736 F.3d 1239, 1249 (9th Cir.2013).

■ A wrongful eviction may give rise to irreparable injury, and in the Ninth Circuit, "it is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150, 1159 (9th Cir.2011) (collecting cases regarding evictions and foreclosures); *see also Jackmon v. America's Servicing Co.,* 2011 WL 3667478 at *3 (N.D.Cal.2011) ("It is undisputed that plaintiffs are harmed if they are evicted from their homes or undergo a foreclosure sale."). This harm is immediate, as defendant initially communicated to

---

6. The court also notes that defendant did not present any evidence regarding, and did little to attempt to refute, plaintiff's claim of retaliation. That Johnson had a cat, or was hostile to defendant, does not explain why Johnson experienced rent increases and notices of termination immediately after her complaints to defendant, to the department of Building and Safety, and the Housing Rights Center. *(See* Johnson Decl. at ¶¶ 14–15).

plaintiff an intent to initiate eviction proceedings in a matter of days, and still expresses an intent to do so. (*See* Johnson Decl. at ¶ 21 [7]; *see also* PI Opp. at 6 ("all of Plaintiff's claims of discrimination and retaliation can be fully and fairly litigated in an unlawful detainer action.")). An eviction would be disruptive to Johnson's life, as she has "developed strong ties to the community including friendships with [her] neighbors." (*See* Johnson Decl. at ¶ 4). Moreover, wrongful eviction is not an injury for which remedies available at law are adequate. If Johnson is evicted and an innocent third party rents the property, the court is not authorized to return Johnson to her original home. *See* 42 U.S.C. § 3613(d); *Smith v. Brown*, 2010 WL 3120203, *7 (W.D.Wash.2010) (in the context of an allegedly discriminatory eviction, finding "irreparable harm if the injunction does not issue because the home itself will forever be lost for Plaintiffs' use and enjoyment ... [It] will not exist for Plaintiffs to move back into should they ultimately succeed in their case.").

Defendant's argument that plaintiff "will not be made homeless" is inapposite, and her argument that Johnson will "be [ ]able to find affordable housing should the injunction not issue" strikes the court as disingenuous considering her other statements about Johnson's below-market rent,

(*See* PI Opp. at 7; *see also id.* at 8 (admitting that Johnson "may have to pay a slight increase in rent but that is strictly a matter of market economics" and that Johnson's rent is "far below market value.")).[8] For the foregoing reasons, the court finds that plaintiff will suffer irreparable harm in the absence of a preliminary injunction.

### C. *Balance of Hardships.*

 The harm that will be caused to plaintiff should she be denied her right to continue residing in her home free from discrimination far outweighs the harm to defendant. Plaintiff has resided in her home since 2001, and there is no evidence in the record that she has materially violated the lease (perhaps other than having a cat), missed rent, or been untimely in her rent payments. (*See, generally*, Answer, Dkt. No. 9, & Opp.). Indeed, plaintiff attempted to pay rent for the full month of October (*see* Johnson Decl. at ¶ 21), and there is no evidence that she will be unable to pay rent for the remainder of the litigation. Although defendant vaguely alludes to the "several reasonable and proper grounds for termination of the tenancy that will be presented[,]" she provides none. (*See* Opp. at 4).[9] As noted above, the reasons defendant does provide in the context of the current briefing appear to

---

**7.** The court is particularly concerned by Johnson's statement that defendant informed her that she would be changing the locks to her unit. (*See* Johnson Decl. at ¶ 21). As defendant and her attorneys surely are aware, before changing any locks, a landlord must file an unlawful detainer complaint, *see* Cal.Code Civ. Proc. § 1166, and may only retake possession of the property upon the issuance of a writ of possession by the trial court, *see id.* at § 1166a, prior to trial or, after trial, upon judgment and the issuance of a writ of execution. *See id.* at § 1170.5.

**8.** Defendant contradicts herself again later in her PI Opp., stating that plaintiff "can find

comparable housing for the same rental rate within the same community." (PI Opp. at 10).

**9.** Far from providing non-discriminatory reasons to terminate Johnson's tenancy, the court was surprised to read in defendant's TRO Opp. that Johnson supposedly has diabetes, which "often results in seizures, heart attacks, and strokes" and "create[s] a slip and fall risk[,]" and therefore renders Johnson's "refusal to move to a downstairs apartment ... unreasonable[.]" (*See* TRO Opp. at 4). Such arguments only strengthen plaintiff's discrimination case.

be pretextual and inconsistent with the reasons defendant previously provided plaintiff. *See supra* at § II.A. Even if defendant's newly asserted reasons were valid, they do not outweigh the hardship plaintiff would face in losing a long-term home. And, as plaintiff suggests, "[s]hould Defendant believe that [p]laintiff were a threat ... injunctive or compensatory remedies are also available to Defendant before this Court." (PI Reply at 10). In short, the court concludes that the balance of hardships tips sharply in favor of plaintiff, who faces eviction—likely a wrongful one—from an affordable home in which she has lived for over a decade.

### D. *Public Interest.*

 In the FHA, Congress declared that "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Accordingly, courts have emphatically declared that the public interest is served by effective enforcement of the FHA. *See, e.g., Gonzalez,* 51 F.Supp.3d at 992–93 (upon a showing of likelihood of success on the merits and irreparable harm, finding that plaintiff met the public interest requirement because "[t]he public interest has been authoritatively declared by Congress in its enactment of the FHA") (citation omitted); *see also U.S. v. Com. of Puerto Rico,* 764 F.Supp. 220, 225 (D.Puerto Rico 1991) (emphasizing "the public interest that all citizens have in seeing vigorous enforcement of civil rights legislation like the Fair Housing Act" in concluding that "the public interest weighs heavily in favor of a preliminary injunction."). Contrary to defendant's suggestion, this public policy is important, regardless of the fact that "[p]laintiff does not receive government assistance and is not living in subsidized housing." (*See* PI Opp. at 10). It is clear that this significant public interest "is an important consideration in the exercise of

equitable discretion in the enforcement of statutes." *U.S. v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 176 (9th Cir. 1987). Therefore, in this case, where the statute authorizes injunctive relief "as the court deems appropriate" to enforce the FHA, 42 U.S.C. § 3613(c), the public interest is clearly served by the entry of a preliminary injunction.

### *CONCLUSION*

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction (**Document No. 12**) is **granted.**

2. Defendant shall not take any further steps to evict plaintiff Norma Johnson pending resolution of the above-captioned case.